In the Matter of A GRAND JURY SUB-
POENA DUCES TECUM DATED
FEBRUARY 18, 1988.

No. M8–25.

United States District Court,
S.D. New York.

March 25, 1988.

Rudolph W. Giuliani, U.S. Atty. for the
S.D. New York, for U.S.; John K. Carroll,
Asst. U.S. Atty., of counsel.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District
Judge:

A private investigation firm moves to
quash a grand jury subpoena *duces tecum*
dated February 18, 1988. The law firm
which hired the investigation firm moves
*pro se* to intervene and to join the investi-
gation firm's motion to quash. For the
following reasons, the motions are granted.

FACTS

The government is in the process of pre-
paring a criminal case by means of a grand
jury presentation. The government's main
witnesses have appeared or will shortly
appear before that grand jury.

"John Doe," one of the targets of the
presentation, hired counsel to assist if he
was called before the grand jury and as
defense attorneys should an indictment be
returned. Counsel properly hired private
investigators to explore the background of
the government's main witnesses.

The government issued a grand jury sub-
poena to take "any and all records" of the
private investigation firm. Movants' Order
to Show Cause With Stay, Second Affida-
vit, Exh. A. Defense counsel and counsel
for the investigation firm convinced the
government that such a subpoena was too
broad and violated the attorney's work
product privilege. The government has re-
duced its demand to:

(1) an identification of all individuals em-
ployed or engaged by [the private investi-
gator] to perform surveillance or other
investigatory functions relating to poten-
tial witnesses in this Office's ongoing
grand jury investigation; (2) photo-
graphs of all such [the private investiga-
tor] employees or agents; and (3) a list
of all individuals interviewed or contact-
ed in any manner by agents or employees
of [the private investigator], or on whom
any surveillance was conducted [and the
dates of such contacts or surveillance.]

Affidavit of Assistant United States Attor-
ney ("AUSA") John K. Carroll, at 3 (brack-

eted material in original). This demand is the subject of the instant motion to quash.

The government asserts that the subpoenaed information is necessary for a separate investigation into alleged threats against the government's main witnesses. In support of this claim, the government states that it has information that "Richard Roe," another target of the government's main investigation, has made threats against a government witness. Counsel for Doe and the investigation firm assert that they have no connections with Richard Roe.

The government also asserts that it has information that two employees of the investigation firm asked court security officers whether the government's main witness was visiting the United States Attorney's Office on a particular day. The government claims that these private investigators represented themselves as law enforcement officials.

## DISCUSSION

"[T]he longstanding principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 249 (2d Cir.1985) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972)).

Movants claim that the common-law work product privilege applies to the information requested by the grand jury subpoena involved in this matter. The Supreme Court recognized the right of attorneys to protection of their work product from discovery in *Hickman v. Taylor*, 329 U.S. 495, 510–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947) and *Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981).

In *Hickman*, the Supreme Court recognized that "unwarranted inquiries into the files and the mental impressions of an attorney" by the opposing attorney would provide substantial intrusion into the effective preparation of a client's case. Thus, the Court held that the work product of a lawyer reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" should be protected from disclosure unless the opposing attorney can show need. The Court also said that oral statements made by witnesses to an attorney in the course of his preparations for trial are absolutely privileged from disclosure....

In *Upjohn*, the Supreme Court reconsidered the rule that no showing of necessity could "overcome protection of work product which is based on oral statements from witnesses." The Court declined to say that such statements are absolutely protected and suggested that a very strong showing of "necessity and unavailability by other means" might permit compelled disclosure of such information.

*In re Grand Jury Testimony of Attorney X*, 621 F.Supp. 590 (E.D.N.Y.1985) (quoting, respectively, *Hickman*, 329 U.S. at 510, 67 S.Ct. at 393 (1947) and *Upjohn Co.*, 449 U.S. at 402, 101 S.Ct. at 689 (1981)) (citations omitted).

### A.  *The Law Firm's Motion to Intervene*

■ The law firm has standing to intervene and join the investigation firm's motion to quash.

[T]he work product doctrine applies to criminal, as well as civil litigation. Moreover, as the [Supreme] Court in *Nobles* observed: "[T]he doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." ... [T]he doctrine applies to material prepared or collected in advance of litigation. It is not disputed that [Doe] represents a grand jury target likely to be indicted.

... The governing rule in these circumstances is that the possessor of the claimed privilege or right may intervene to assert it....

*Appeal of Hughes*, 633 F.2d at 285–86 (quoting *United States v. Nobles*, 422 U.S. 225, 238–239, 95 S.Ct. 2160, 2170–2171, 45 L.Ed.2d 141 (1975)) (citations omitted).

Affidavits filed in support of this motion to quash contain averments sufficient to establish *prima facie* that law firm has a right to intervene and assert its claim of protectable work product. These averments include that the investigation firm was hired to act as the law firm's agent, that the investigation firm was "given instructions to conduct an investigation to assist in preparation for an anticipated criminal trial, that the instructions given to [the agents] reflected [the law firm's] trial preparation efforts and strategies, and that the information subpoenaed included the results of the agent's efforts." *Appeal of Hughes*, 633 F.2d 282, 288 (3d.Cir.1980). The law firm's motion to intervene is therefore granted.

### B. *The Motion to Quash*

■ The subpoena at issue in this motion would discover the identities of the agents and details of the steps they have followed in undertaking the investigation for Curtis, including "a list of all individuals interviewed or contacted in any manner by agents or employees" of the investigation firm. Affidavit of AUSA Carroll, at 3. This request for information reflects more than a mere concern over threats to government witnesses; it seeks also to discover the fruits of the investigation conducted by defense counsel. Such a subpoena is a clear violation of the attorney's work product privilege. As such, the subpoena must be quashed.

When the government chooses to subpoena an agent of an attorney to inquire into his investigative activities, and a valid work product claim is interposed, a motion to quash should be granted unless the government can show that its proposed line of inquiry falls within the good cause exception which our cases

have recognized. A "general unsubstantiated allegation is [in]sufficient to overcome the protection afforded by the work-product doctrine."

*Appeal of Hughes*, 633 F.2d at 290 (quoting *In re Grand Jury Investigation (Sun Company, Inc.)*, 599 F.2d 1224, 1232 (3d Cir.1979)) (brackets added by the court in *Hughes*) (citations omitted). The government argues that it has met its burden of proof of good cause by setting forth, in the *ex parte* affidavit of AUSA Carroll, allegations of specific incidents of harassment of government witnesses. The government infers that the investigators are responsible for some or all of these incidents and the subpoenaed information is necessary for a proper grand jury inquiry. The movants' affidavits aver that the investigators have "conducted lawful surveillance of a potential government witness," Attorney's Affidavit, at ¶ 5, but at no time "threatened, intimidated or interfered in any manner with the potential government witness." Investigator's Affidavit, at ¶ 13.

The Third Circuit has commented that a showing by the government that the subpoenaed agents were engaging in criminal activity could constitute good cause sufficient to overcome work product protection. "It would be intolerable to permit investigators hired by defense counsel to attempt to obstruct justice by influencing or threatening witnesses. It would be equally intolerable to permit such investigators to violate the law by posing as officers or employees of the Government." *Appeal of Hughes*, 633 F.2d at 290. The government argues that it is "not obliged to accept counsel's bare assertion that 'IGI has not threatened or harassed anyone.'" Government's Memorandum in Opposition to Joint Motion to Quash Grand Jury Subpena Duces Tecum, at 4. Yet, the government also submits only a bare assertion of evidence, which is at best an inference, as sufficient to support an order which would seriously compromise the movants' work product privilege. As the Third Circuit went on to note in Hughes,

[w]e may not presume that attorneys or their agents routinely engage in such [intolerable] activities. The speculative

possibility that they might cannot justify endangering protected work product by bringing them before a grand jury. Moreover, when the examination of an attorney's agent with respect to the inquiries he has carried out in that capacity is sought on the ground that the agent, or the attorney, may have engaged in misconduct, *something more is required to substantiate the reasonableness of the government's assertions than an ex parte affidavit.*

*Appeal of Hughes,* 633 F.2d at 290 (emphasis added). The government has offered only an ex parte affidavit in its opposition to this motion to quash. Although the affidavit alleges specific incidents of harassment of government witnesses, it does not offer sufficient evidence of the investigators' involvement to overcome work product protection.

The government argues that it should, at least, not be prohibited from obtaining a sworn statement before the grand jury that the private investigator is not working for Richard Roe, who allegedly made threatening statements about government witnesses. While this seems unnecessary, I will direct that an officer of the private investigation firm appear before the grand jury and, after giving his name and address, answer the following questions:

Q. Has your firm ever been employed by [Richard Roe] to do any investigatory functions relating to potential witnesses in this grand jury investigation?

Q. Has your firm either directly or indirectly given [Richard Roe] or any person employed by or an agent or attorney of [Richard Roe] any information which your firm obtained in connection with any investigation of or relating to potential witnesses in this grand jury investigation?

Should either of these questions be answered in the affirmative, then, of course, appropriate follow-up questions will be permitted.

It is interesting to note that while the government subpoena appears to seek information about the possible defense of

this case, the government will not now disclose to John Doe's counsel any of its witnesses or potential witnesses.

Should any other questions arise in connection with this subpoena, they should, in the interest of judicial economy, be referred to me.

If the government's assertion that the investigators misrepresented themselves as police officers is true, and the government is contemplating a prosecution of these private investigators for violations of 18 U.S.C. § 1001, then there will be no need for much of the information sought by the subpoena; the testimony of the court security officers before the grand jury would suffice for an indictment.

SO ORDERED.